

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOT FAZIO and DAWN FAZIO | : | CIVIL ACTION |
| v. | : | |
| STATE FARM FIRE & CAS. CO. | : | NO. 16-1987 |

**FILED**
MAR 22 2017
KATE BARKMAN, Clerk
____ Dep. Clerk

**MEMORANDUM AND ORDER**

THOMAS J. RUETER
United States Magistrate Judge

March 22, 2017

Presently before the court is defendant State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment ("Motion," Doc. No. 26) and plaintiffs' response in opposition thereto ("Pls.' Resp.," Doc. No. 28). The court held oral argument on the Motion on March 17, 2017. The court finds that based on the undisputed facts, defendant State Farm has fulfilled its obligations under the insurance contract at issue and is entitled to summary judgment as a matter of law. Therefore, the Motion is **GRANTED**.

**I.      BACKGROUND**

This is an insurance coverage dispute case. On March 29, 2016, plaintiffs filed an Amended Complaint ("Am. Compl.") alleging a single count of breach of contract against State Farm, their insurer, in the Court of Common Pleas for Philadelphia County. State Farm removed this matter to federal court. Plaintiffs contend that on March 3, 2015, they suffered "sudden and accidental direct physical loss and damage" to their property located in Plymouth Meeting, Pennsylvania (the "Property") caused by wind, snow and ice. See Am. Compl. ¶ 4. Plaintiffs maintain that the Property is covered by a homeowner's insurance policy no. 78-EW-7584-2 issued by State Farm (the "Policy") and that State Farm has refused to pay monies owed under the Policy relating to the March 3, 2015 damage. Plaintiffs assert that State Farm's failure to pay

xc: Legal

amounts due under the Policy constitutes a breach of the insurance contract (Am. Compl.). On May 4, 2016, State Farm filed an answer with affirmative defenses (Doc. No. 4).

State Farm contends that summary judgment is warranted primarily because the alleged loss is not covered under the Policy due to the Policy's exclusion provisions. State Farm further contends that plaintiffs have presented no expert opinion to rebut State Farm's expert's opinion that the cause of the damages they allege to have suffered was not the weather event on March 3, 2015 and, therefore, the losses are not covered by the terms of the Policy.[1]

In their claim against State Farm, plaintiffs seek to replace all the stucco and most of the windows on the Property, as well as, inter alia, the dining room floor inside the Property. See J&P General Report at 1.[2] The claim initially was assigned by State Farm to Pilot Catastrophe Service's adjustor Kyle Hayes Gerhardt who inspected the Property and determined the Policy covered a portion of the claimed loss. As a result of the inspection, plaintiffs received an insurance payment from State Farm in the amount of $4,871.05 (Motion Exs. H, I). Shortly thereafter, plaintiffs forwarded to State Farm an estimate for additional repairs prepared by J&P General Contractors, Inc. ("J&P General") totaling $85,275.00 (Pls.' Resp. Ex. A). State Farm assigned the claim to State Farm specialist Jamie Sabatini who, on September 10, 2015, with State Farm team manager Annie German, inspected the Property. After the inspection, Sabatini advised plaintiffs that an expert was needed to determine the amount of damages and repairs

---

[1] State Farm also contends that with respect to some of plaintiffs' claims, i.e., alleged water damage to the dining room floor, plaintiffs failed to show an "accidental direct physical loss" to trigger coverage in the first instance. See N.T., 3/17/17, at 8.

[2] The parties stipulated that plaintiffs are not making a claim for the following categories of damages: personal property (contents), additional living expenses, and loss of use. See Doc. Nos. 16, 17, and 18.

attributable to the March 3, 2015 incident. As a result, State Farm contacted Gary Popolizio, P.E. of GLP Construction Management, Inc. ("Popolizio") to inspect the Property and issue a report (Motion Ex. K). Popolizio prepared an expert report of damages and causation related to the March 3, 2015 loss and a supplemental payment of $12,037.08 was made by State Farm to plaintiffs (Motion Exs. M and N).[3]

State Farm filed the instant Motion on March 1, 2017, seeking summary judgment pursuant to Fed. R. Civ. P. 56, asserting that the additional damages claimed by plaintiffs are not covered under the terms and exclusions of the Policy. This matter initially was assigned to the Honorable J. Curtis Joyner. The parties consented to proceed before the undersigned (Doc. No. 12). Pursuant to the court's Scheduling Orders (Doc. Nos. 15, 24 and 25), discovery in this matter is complete and trial is scheduled to commence on March 29, 2017.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[3] The total amount of insurance coverage paid to plaintiffs by State Farm is $16,908.14 on account of the damages related to the March 3, 2015 loss. See N.T., 3/17/17, at 30. The damages State Farm paid covered repairs to the master bedroom including replacing drywall, insulation, window trim, carpet and pad, and painting the wall, ceiling and trim. Based on State Farm's expert report, State Farm concluded that the damages to the master bedroom were an accidental direct physical loss as a result of ice that dammed in the windows and seeped through into the room. (N.T., 3/17/17, at 4-5.) State Farm also paid to repair a single water stain on the dining room ceiling, to repair drywall in the powder room and to paint the ceiling and walls in the powder room. Id. at 5. State Farm paid to replace the exterior porch ceiling, to paint the porch ceiling, to power wash the stucco in the porch area and the front elevation around the porch, to reset the down spouts, and to repair the upper front corner stucco. Id. These losses were paid by State Farm and are not at issue herein.

Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Furthermore, an issue is "genuine" if a reasonable jury possibly could hold in the nonmovant's favor on that issue. Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). To demonstrate that no material facts are in dispute, the moving party must show that the non-moving party has failed to establish one or more essential elements of his or her case. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). In analyzing the evidence, the court will view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 286 (3d Cir. 2009). Once the moving party has demonstrated that there is no genuine issue of material fact, the non-moving party may present evidence in accordance with Fed. R. Civ. P. 56(c). The nonmovant must present affirmative evidence in order to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

### B. Pennsylvania Law on Coverage Disputes

The parties do not dispute that Pennsylvania law applies. "Ordinarily [under Pennsylvania law] in insurance coverage disputes an insured bears the initial burden to make a prima facie case showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." State

Farm Fire & Cas. Co. v. The Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citation omitted). Disclaiming coverage on the basis of an exclusion is an affirmative defense. Koppers Company, Inc. v. The Aetna Cas. & Surety Co., 98 F.3d 1440, 1446 (3d Cir. 1996) (citations omitted). Exclusions are construed narrowly against the insurer. Fry v. The Phoenix Ins. Co., 54 F.Supp. 3d 354, 361 (E.D. Pa. 2014). In the context of a motion for summary judgment, if the movant/insurer, establishes that an exclusion applies, the insured must come forward with evidence to raise a factual question sufficient to withstand summary judgment on the application of the exclusion. Id. at 363-64. See also Dougherty v. Allstate Prop. & Cas. Ins. Co., 2017 WL 888218, at *3 (3d Cir. Mar. 6, 2017) (not precedential) (nonmovant must offer "more than a 'mere scintilla of evidence' to rebut [the insurer's] credible showing that the maintenance exclusion barred coverage for his claim") (quoting Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)). Under Pennsylvania law, the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. Pellegrino v. State Farm Fire & Cas. Co., 2013 WL 3878591, at *4 (E.D. Pa. July 29, 2013) (quotations omitted).

    **C.**    **The Policy**

    It is undisputed that the Policy language at issue states as follows:

    **SECTION I – LOSSES INSURED**

    **COVERAGE A – DWELLING**

    We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I – LOSSES NOT INSURED**.
    . . .

## SECTION I – LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n, below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   . . .

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

   . . .

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   . . .

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, developing, surveying, siting;
      (2) design, specifications, workmanship, construction, grading, compaction;
      (3) materials used in construction or repair; or
      (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; . . . .

## SECTION I – LOSS SETTLEMENT

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement – Similar Construction**

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damages part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING** . . .

6

(Policy at 7, 9, 10-11 (emphasis in original).) Plaintiffs do not contend that any of the above provisions of the Policy are ambiguous.

### D. State Farm's Expert Reports

Popolizio prepared an expert report for State Farm dated November 2, 2015 (Motion Ex. L, "Popolizio Report"). Popolizio noted that

> [c]oncerns were expressed [by plaintiffs] that ice damming from this past winter (2014-2015) season damaged portions of the home including the following:
>
> * The interior finishes within the master bedroom.
> * The interior of the 2nd floor back-right bedroom.
> * The ceiling and wood floors in the 1st floor dining room.
> * To various window units in the home that included the following:
>   * Master bedroom front and side units.
>   * 2nd floor back-right bedroom units.
>   * 1st floor dining room side unit.

(Popolizio Report at 3.) Plaintiffs assert that this damage was caused by moisture seeping through the stucco and windows into the interior of the Property.

Popolizio reported that the stucco was installed at the Property in 2002, thirteen years prior to the claimed date of loss on March 3, 2015. Id. Popolizio opined that the damage suffered to the stucco, aside from the small patch of stucco State Farm paid to repair, see supra n. 3, occurred because of "long-term age, wear, installation deficiencies and a lack of proper closure details." Id. at 6. Popolizio inspected the stucco and noted, inter alia, that it was thinner than it should have been and lacked appropriate flexible sealer along the interface with different materials such as at a window or vent. Id. The expert concluded that

> Over time (i.e. years), moisture entering through the stucco and penetration points has caused the cracks and streaking effects observed at the time of my review to occur. These conditions are not the result of a recent weather or ice damming effect, but incurred as on ongoing influence.

7

Id.

The windows were installed approximately thirteen years prior to the alleged March 3, 2015 date of loss, and the ten year warranty on the windows had expired. Id. at 7. With respect to the wood window units, Popolizio concluded that "[t]he loss of the seal between the two thermal glazing panes and the resulting 'fogging' effects have been incurred due to an aging window system and were not incurred from a singular, recent, or ice damming effect." Id. at 7. With respect to the wood flooring in the dining room, Popolizio found "no evidence of damage due to water infiltration or leaks." Id.

Popolizio filed a supplement to his report dated February 3, 2017. (Motion Ex. P, "Popolizio Supplemental Report"). In this supplement, Popolizio reviewed the January 23, 2016 estimate obtained by plaintiffs from Advanced Plastering, Inc. (Pls.' Resp. Ex. B, "Advanced Plastering Estimate"). Popolizio stated that the Advanced Plastering Estimate did not change any of the conclusions contained in the Popolizio Report. He further concluded that the Advanced Plastering Estimate "is based upon providing a complete restoration project that is not reflective of repairs to an existing building regarding potential damage associated with a claimed weather event or ice damming." (Popolizio Supplemental Report at 2.) Popolizio also noted an estimate obtained by plaintiffs from MD Stucco, Inc. dated November 7, 2003, including a cost proposal for stucco work at the Property in the amount of $12,500. Id. Popolizio opined that the MD Stucco, Inc. estimate indicated that "considerations toward restorations to the exterior stucco assembly in 2003 were in place prior to the more recent March 2015 reported loss date for the subject home." Id. at 3.

### E. Plaintiffs' Estimates

Plaintiffs have not presented expert reports specifically addressing the cause of the damage at the Property. Rather, plaintiffs have submitted two estimates for repairs to the Property. See Pls.' Resp. Exs. A and B. The first estimate is dated July 9, 2015, is unsigned and was prepared by J&P General ("J&P General Estimate"). The J&P General Estimate calls for repairs totaling $85,275. Id. The repairs include, inter alia, removing and replacing all the stucco and most of the windows at the Property, as well as certain flooring. Id. at 1-2. In this estimate, "ice damming" and "ice and water" were identified as causing damage to approximately 300 square feet of stucco at the front porch roof, and as causing damage to approximately 250 square feet of stucco above the garage door. Id. at 1. However, the terms "ice damming" and "ice and water" were used in a conclusory manner with no explanation of the investigation conducted by the unidentified contractor. The J&P General Estimate states that windows were damaged by "ice and water," but does not explain how most of the windows in the Property suffered this damage as an "accidental direct physical loss" related to the March 3, 2015 weather event. At oral argument, plaintiffs' counsel conceded that the J&P Estimate was unclear as to the cause of the damage to the windows and the need to replace all of the windows. Counsel argued as follows:

> And to be honest, I don't know if he's [referring to the J&P Estimate] saying . . . remove and replace all of the windows due to ice damming, or if it's some sort of matching. I would concede that it's not in his report there. I mean, obviously the heading is windows damaged by ice and water. So I think it's his position that all of the windows were damaged by ice and water, but, you know, I'm not 100% sure what . . . windows State Farm paid for and what window – of the one – on the property that J&P is estimating to repair.

9

(N.T., 3/17/17, at 23-24.) The J&P General Estimate contains no discussion of impact of age and wear, and of installation and workmanship deficiencies at the Property.

The Advanced Plastering Estimate was prepared on January 13, 2016 and estimated repairs totaling $103,260. This estimate recommended, inter alia, the removal and replacement of all stucco at the Property, removal of all windows and doors at the Property to "flash correctly" (estimate does not include price of new windows), and installation of all new roof flashings and drip caps. Id. The Advanced Plastering Estimate recommends removal and replacement of all stucco at the Property for two reasons: (1) "[t]o guarantee and warranty that your home will not leak again," and (2) "[i]t is impossible to match the existing texture and color of the stucco [and] [p]atches would be easily noticeable in the finished product." Id. at 1. The Advanced Plastering Estimate contains no expert opinion as to the cause of the damage allegedly suffered at the Property. The Advanced Plastering Estimate contains no discussion of the impact of age and wear, and of installation and workmanship deficiencies at the Property.

In addition to the J&P General Estimate and the Advanced Plastering Estimate, at oral argument, plaintiffs' counsel at first appeared to be relying upon the testimony of plaintiffs regarding the cause of the damage to the dining room floor and the windows. Plaintiffs' counsel noted that plaintiffs would testify that the dining room floor was not damaged before March 3, 2015, but after March 3, 2015, the floor was buckled. (N.T., 3/17/17, at 24.) The court asked plaintiffs' counsel "what evidence do you have that [the fog and water in the windows] was caused by the ice damming or the water damming as opposed to just they're old windows and they just let the air in, or the moisture in?" Id. at 25. Plaintiffs' counsel replied, "Well, you know, again, I rely on Plaintiff's testimony, that the windows weren't damaged before the storm,

but more importantly, we also have the J&P estimate that very specifically says windows damaged due to ice and water." Id. at 25-26. Noting that plaintiffs' depositions were not cited by plaintiffs in their response to the Motion, or attached thereto, the court informed plaintiffs' counsel it would not consider plaintiffs' testimony in opposition to the Motion unless plaintiffs asked the court to reopen the record and provided the court with the pertinent deposition transcripts. Id. at 27. Plaintiffs' counsel acknowledged that plaintiffs' response to the Motion was based "primarily" on the J&P General Estimate and the Advanced Plastering Estimate, and has not asked the court to reopen or supplement the record. Id.

### F. The Motion

Here, plaintiffs, the insureds, met their initial burden by establishing a prima facie case showing that their claims fell within the Policy's grant of coverage. State Farm admits that a portion of plaintiffs' claims were covered by the Policy. The burden then shifted to State Farm to demonstrate that a Policy exclusion excuses the insurer from providing coverage for the unpaid items. See State Farm Fire & Cas. Co. v. The Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). State Farm has met this burden. The uncontroverted evidence provided by State Farm's expert is that the loss claimed by plaintiffs regarding the stucco that State Farm has not covered was caused not by ice damming or an isolated weather event, but "the effects of long-term age, wear, installation deficiencies, and a lack of proper closure details." (Popolizio Report at 6.) Additionally, aging of the window system resulted in the window units losing the seal between the two thermal glazing panes and experiencing fogging effects, and this loss was not caused by a "singular, recent, or ice damming effect." Id. at 7. These losses are not covered under the exclusion provisions of the Policy. See supra at 5-6 (relevant terms and exclusions of

11

the Policy). Similarly, the other losses claimed by plaintiffs, which State Farm did not cover, such as the dining room floor, were not an accidental direct physical loss covered by the Policy. See id.

Plaintiffs offered no evidence that, pursuant to the terms of the Policy, remediation of the stucco damage requires removal and replacement of all the stucco at the Property as recommended in the J&P General Estimate and the Advanced Plastering Estimate. The Policy provides that State Farm "will pay the cost to repair or replace with similar construction and for the same use on the premises . . . <u>the damaged part of the dwelling</u> covered under SECTION I - COVERAGES, COVERAGE A – DWELLING." (Motion Ex. F (emphasis added).) The Policy clearly and unambiguously requires State Farm to pay the repair or replacement cost of the damaged part of the Property. It is undisputed that only a small and discrete area of the stucco suffered damage as a result of the weather event on March 3, 2015. See N.T., 3/17/17, at 10, 30-34. See also id. at 22 (Plaintiffs' counsel stated: "Yes, and to be clear, you know, we're not claiming that the entire stucco is damaged."). The Policy does not require State Farm to replace all the stucco on the entire Property.

In <u>Greene v. United Servs. Auto. Assoc.</u>, 936 A.2d 1178 (Pa. Super. Ct. 2007), <u>appeal denied</u>, 954 A.2d 577 (Pa. 2008), the court considered and rejected a similar argument. In Greene, the part of the building damaged was one slope of a multi-sloped roof. The insured contended that the insurer was required to replace the entire roof because the roof was "part of the building damaged." Id. at 1186. The trial court rejected this argument and, according to the appellate court, "highlighted the absurdity" of the argument by stating that the logic of the argument "would necessitate replacing all siding when one piece of siding is damaged, or an

12

entire door when a door knob is damaged. It defies common sense." Id. (quoting Trial Court Opinion, 2/23/07, at 8). Similarly, the court rejected the insured's argument that the term "like construction" in the policy required the entire roof to be replaced because the exact shingles no longer were available. Id. The court concluded that the policy did not require replacement with the identical item damaged, but that replacing the damaged shingles with shingles similar in function, color and shape met the policy parameters of "like construction." Id. Other courts have similarly held that a homeowner's insurance policy requiring replacement of a damaged portion of the insured property does not obligate the insurer to replace the entire roof, but "to pay only for the damaged portion of the roof and the replacement of shingles in that area." Enwereji v. State Farm Fire & Cas. Co., 2011 WL 3240866, at *6 (E.D. Pa. July 28, 2011) (claim involving damage to part of a roof). Moreover, payment to the insureds here to completely replace all of the stucco and most of the windows at the Property would defeat the purpose of an insurance contract. As the court in Enwereji explained:

> [T]he purpose of an insurance contract – restoring the insureds to their pre-loss condition – suggests that the insured should not receive a windfall: "Since insurance policies are based on principles of indemnity rather than enrichment, claimants should not be permitted to exploit their losses and use them as an opportunity to remodel their homes at the insurer's expense."

Id. (quoting Burton v. Republic Ins. Co., 845 A.2d 889, 896 (Pa. Super. Ct. 2004) (citation omitted)).

In this case, the Advanced Plastering Estimate submitted by plaintiffs recommends that "all of the stucco needs to be replaced. It cannot be patched. It is impossible to match the existing texture and color of the stucco. Patches would be easily noticeable in the finished product." (Advanced Plastering Estimate at 1.) The estimate also stated that existing

stucco system is "missing many elements that are code requirements in today's stucco installations." Id.

State Farm's expert challenged many of these items in his Supplemental Report, especially noting that the Policy does not cover costs for: (1) upgrades and enhancements to the proposed stucco assembly that were not present in the original construction of the home, (2) corrective work such as window removal and resetting (or replacement) designed to correct workmanship issues that were present in the original construction of the home, (3) work to the roofing and flashing systems on the home that was not damaged, but deficient in their original workmanship, (4) warranties ranging from 5-years to 10-years that do not currently exist for the subject home, and (5) various upgrades and enhancements serving to inflate the cost of the stucco replacement work, regardless of the cause for the need to undertake this task. (Popolizio Supplemental Report at 2-3.) Popolizio concluded as follows:

> It is also my opinion that the repair to stucco assemblies can be accomplished using readily available materials, tools, and techniques that are commonly accepted and utilized within the building trade industry. Trade organizations such as the Stucco Manufacturers Association ("SMA") and Plaster Council, as well as the Portland Cement Association ("PCA") publish guidelines toward repair of stucco claddings that include restorations ranging from small cracks to larger stucco areas.

Id. at 3.

The parties admit that State Farm's obligation is "to put the property back into its pre-loss condition." (N.T., 3/17/17 at 29 (defense counsel), 32 (plaintiffs' counsel)). The parties acknowledged that when the stucco was installed at the Property, it did not comply with the requirements of present day building codes. Id. The parties also agreed that the stucco system at the Property did not comply with the new code prior to the loss and, after the patch paid for by

State Farm, the stucco remains in compliance with the old code, but not the new code. Id. at 32-33. The parties agreed that if the stucco were being applied today, there would be different methods and different requirements for stucco. Id. at 33. The position of plaintiffs' counsel is that the repair/patch cannot be done because "to do a repair you have to install these particular elements, according to today's code. And you can't install these elements into the existing system. So therefore a repair can't be done." Id. However, plaintiffs' counsel admitted that "generally if you can perform a repair, tha[n] absolutely, perform the repair." Id. at 34-35.

The uncontroverted evidence presented in State Farm's expert reports is that the damage to the areas of stucco covered by the Policy can be repaired using readily available materials, tools and techniques, without replacing all the stucco on the Property. State Farm paid plaintiffs for the cost of these repairs. Repairing the sections of the damaged stucco would not be in violation of local building codes; only if plaintiffs elected to replace the stucco on the entire Property would the stucco be required to be applied in accordance with the most up-to-date building codes. Id. at 11-12, 33-36.[4]

---

[4] The Advanced Plastering Estimate was authored by Ken White. Mr. White advised not to patch the stucco because, without completely replacing all the stucco, he, as a contractor, could not guarantee and warrant that the Property will not suffer leaks in the future. In order to replace all the stucco and comply with the new building code, he would have to "include weep screeds, control joints, expansion joints and casing beads." (Advanced Plastering Estimate at 1.) These new elements could not be installed without removing and replacing the current stucco system in its entirety. Mr. White, however, does not opine that patching of the isolated area of stucco damaged by the March 3, 2015 weather event would be illegal or otherwise not in compliance with local building requirements to which the Property was subject in its pre-loss condition. Mr. White's concern was that the patching would not eliminate the defects in the stucco that preexisted the loss in this case. State Farm's only obligation is to return the Property to its pre-loss condition, not to correct an ongoing condition that was unrelated to the loss. Therefore, State Farm was not required to replace the stucco in its entirety even though failure to do so may cause plaintiffs to suffer continuing leaks at the Property.

With respect to the windows at the Property and the dining room floor, plaintiffs have failed to present evidence sufficient to rebut State Farm's uncontroverted evidence that the claimed losses are not covered by the Policy. The only argument presented by plaintiffs to support their claim that the alleged damage to the dining room floor was a result of an "accidental direct physical loss" was a reference during oral argument to plaintiffs' alleged testimony that the floor was undamaged prior to March 3, 2015, but buckled thereafter. The court and plaintiffs' counsel agreed this evidence was not before the court and would not be considered by the court. The Policy does not cover this claimed loss to the floor. With respect to the windows, State Farm paid for repair to certain windows. Other than a conclusory statement that all the windows in the Property were damaged by ice and water, see J&P General Estimate at 1, there was no admissible evidence offered by plaintiffs to support the cause of the alleged window damage, or to rebut the Popolizio Report.[5]

## III. CONCLUSION

In analyzing the evidence, the court has viewed the facts in the light most favorable to the non-moving party, plaintiffs, and has drawn all inferences in plaintiffs' favor. The undisputed evidence shows that State Farm paid the entire amount it owed to plaintiffs under the terms of the Policy, i.e., $16,908.14. (N.T., 3/17/17, at 30.) Plaintiffs have not satisfied their burden under Fed. R. Civ. P. 56 to rebut State Farm's evidence that demonstrated that the unpaid

---

[5] The Advanced Plastering Estimate submitted by plaintiffs includes many other proposed repairs to the Property such as, inter alia, removing all doors on the Property and "flash correctly," installing new step flashings on all roofs and a new custom bent chimney cap on the top of the chimney, and adding flashing to decks "according to code in a manner which exceeds industry standards." See Advanced Plastering Estimate at 4. Plaintiffs have produced no evidence that these repairs are losses covered by the Policy.

portions of plaintiffs' claims were not covered under the terms of the insurance contract. See Anderson, 477 U.S. at 248 ("[A] plaintiff may not, in defending against a motion for summary judgment rest on mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."). Thus, summary judgment must be entered in favor of defendant State Farm. An appropriate order follows.

BY THE COURT:

THOMAS J. RUETER
United States Magistrate Judge